EXHIBIT A

# EXHIBIT A

**COMMONWEALTH OF KENTUCKY**
**JEFFERSON COUNTY CIRCUIT COURT**
**CIVIL ACTION NO.: _____**

**CHRISTOPHER D. NILSSON**                                    **PLAINTIFF**
**6907 SPOURTLAND DRIVE**
**LOUISVILLE, KY 40228**

**v.**

**JEFFERSON COUNTY PUBLIC SCHOOLS**                          **DEFENDANTS**
**3001 CRITTENDEN DRIVE**
**LOUISVILLE, KY 40209**

**AND**

**WAYNE STONE**
      **IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY**
      **AS REPRESENTATIVE OF JCPS**
      **3001 CRITTENDEN DRIVE**
      **LOUISVILLE, KY 40209**

**RAGHU SHEZHADRI**
      **IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY**
      **AS REPRESENTATIVE OF JCPS**
      **3001 CRITTENDEN DRIVE**
      **LOUISVILLE, KY 40209**

**ANNETTE HARRIS**
      **IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY**
      **AS REPRESENTATIVE OF JCPS**
      **3001 CRITTENDEN DRIVE**
      **LOUISVILLE, KY 40209**

**BRENT ATWOOD**
      **IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY**
      **AS REPRESENTATIVE OF JCPS**
      **3001 CRITTENDEN DRIVE**
      **LOUISVILLE, KY 40209**

## **VERIFIED COMPLAINT**

Comes now the Plaintiff, Christopher Nilsson ("Mr. Nilsson" or "Plaintiff"), by and

through counsel, and for his Complaint against Jefferson County Public Schools ("JCPS"), Wayne

1

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000001 of 000020

Stone ("Mr. Stone"), individually and in his official capacity as a IT Supervisor of JCPS, Raghu

Shezhadri ("Mr. Shezhadari"), individually and in his official capacity as a Director of IT of JCPS,

Anette Harris ("Ms. Harris"), individually and in her official capacity as a Assistant Director of IT

of JCPS, and Brent Atwood ("Mr. Atwood"), individually and in his official capacity as a Project

Manager of JCPS (collectively, the "Defendants") and states as follows:

## JURISDICTION AND VENUE

1. Plaintiff, Mr. Nilsson, is a resident of Louisville, Kentucky and as such, is a resident of Jefferson County, Kentucky.

2. Defendant, JCPS, is a Kentucky Corporation with its principal place of business in Kentucky, and as such is a resident of Kentucky.

3. Defendant, Mr. Stone, is an individual who is believed to be a resident of Kentucky.

4. Defendant, Mr. Shezhadari, is an individual who is believed to be a resident of Kentucky.

5. Defendant, Ms. Harris, is an individual who is believed to be a resident of Kentucky.

6. Defendant, Mr. Atwood, is an individual who is believed to be a resident of Indiana.

7. JCPS submits itself to the jurisdiction of this Court under KRS 454.210, by transacting any business in the Commonwealth. Specifically, JCPS operates the school district in Louisville, Kentucky.

8. Mr. Nilsson's cause of action arises out of events that took place in Louisville, Kentucky.

9. Mr. Nilsson's damages exceed the threshold requirement of five-thousand dollars ($5,000) and, therefore, this Court has proper jurisdiction over the matter.

10. Plaintiff's causes of actions arise under the Kentucky Civil Rights Act, as codified in KRS Chapter 344. As such, pursuant to KRS § 344.450 this action must be and is being brought in the Circuit Court in the county in which the alleged action arose.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000002 of 000020

## FACTUAL ALLEGATIONS

1. Mr. Nilsson began employment with JCPS in 2017 as a Technical Services Coordinator.

2. Mr. Nilsson earned $30.17 per hour.

3. From May of 2021 to November of 2021, Mr. Stone held eleven (11) "Due Process" meetings with Mr. Nilsson. These are hearings in which a supervisor brings allegations against an employee.

4. Such excessive meetings were used by Mr. Stone to harass Mr. Nilsson over minor issues not related to the actual performance of Mr. Nilsson's work. There are several examples listed below showing the petty issues which Mr. Stone used to increase the stress experienced by Mr. Nilsson, Mr. Stone's subordinate.

5. On June 15, 2021, Mr. Stone held a Due Process Meeting to discuss several allegations made against Mr. Nilsson. Mr. Atwood and Ms. Harris were also present during this meeting.

6. The first allegation concerned Mr. Nilsson's failure to notify Mr. Stone by email when Mr. Nilsson began work after using FMLA leave in the morning.

7. Mr. Stone stated the facts as that on the week of June 7th to June 11th Mr. Nilsson used FMLA each morning, but arrived to work later in the morning.

8. Mr. Stone alleged that Mr. Nilsson failed to notify him by email on June 10th and 11th when Mr. Nilsson arrived and began work.

9. Mr. Nilsson did email Mr. Stone on June 7th, 8th, and 9th.

10. Mr. Stone stated that the reason why he requested that Mr. Nilsson email him when actually at work, separate from the first notice in the morning that Mr. Nilsson would be using approved FMLA time, was to facilitate granting access when a school asked him for

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000003 of 000020

3

approval, as Mr. Nilsson's work required him to complete work at schools all across the county.

11. However, on the week in question of June 7th to June 11th, Mr. Stone was on vacation and was not at work. Mr. Stone did not supply another contact person to whom Mr. Nilsson should email, but instead insisted that he must be emailed, even though he was not at work.

12. Mr. Stone did not clarify that another supervisor would be checking his emails and instead insisted that he checks his email regardless of whether he was on vacation or not.

13. Mr. Nilsson knew Mr. Stone was on vacation that week and stated that as the reason why he did not email him.

14. Mr. Stone did not accept this explanation, reasoning that he because he checked his email every day reagardless of whether he was on vacation or not, that he should always be included.

15. Mr. Nilsson reasonably concluded that an employee taking vacation time would not handle daily matters such as emailing when he arrived at work, but Mr. Stone rejected this reasonable explanation.

16. Mr. Stone's insistence that he be emailed, even though the stated purpose for notification did not exist when Mr. Stone is not working, points to a troubling pattern of hostility and retaliation towards Mr. Nilsson.

17. The second allegation concerned Mr. Nilsson's alleged tampering with the GPS module installed in the van issued to Mr. Nilsson to store tools and to travel between schools.

18. On May 4th, Mr. Stone said that Mr. Nilsson's van needed maintenance, so it was taken to the shop, and Mr. Nilsson was issued a pickup truck to use.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000004 of 000020

4

19. All vehicles in the IT department are equipped with a GPS module which monitors the location of the vehicle at all times.

20. The GPS is a box attached to the driver's side footwell of the vehicle, near the pedals.

21. On or about 12:30 pm, Mr. Nilsson left the Nichol's garage, and visited a fast food drive thru.

22. Mr. Nilsson then drove from Bowen Elementary School towards Ramsey Middle School, the next school on his list. Along the way, Mr. Nilsson stopped at his house to retrieve tools, because his house was closer than the repairshop where his van was being fixed and which contained his other tools.

23. Mr. Stone then points out the crucial piece of evidence that the GPS showed that on or about 1:21 pm, Mr. Nilsson pulled into the driveway of his house.

24. On or about 1:22 pm, the GPS module stopped communicating, and the software system sent an automatic alert to Mr. Stone.

25. Mr. Stone alleges that because the GPS module stopped working at 1:22 pm and because Mr. Nilsson was in his driveway, that Mr. Nilsson tampered with the GPS module.

26. Mr. Nilsson emphatically denies tampering with the GPS module.

27. Mr. Stone did not provide any evidence that the GPS module had physical damage consistent with tampering.

28. Contradictory to his theory, Mr. Stone stated that he "guessed" Mr. Nilsson was not aware that the pickup truck had GPS tracking.

29. Mr. Stone did not provide a specific theory as to how Mr. Nilsson tampered with the device, but simply asserts that the only reasonable conclusion is that Mr. Nilsson must have tampered with the device.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000005 of 000020

5

30. Mr. Nilsson guessed that because the GPS module is located near the pedals in the driver's side footwell, that it could have easily been kicked accidentally.

31. Mr. Nilsson's explanation is consistent with arriving at a location, as he arrived at his house at 1:21 pm, and then immediately exiting the car at which time the GPS module would have been accidentally struck by the work boots Mr. Nilsson wears, consistent with when the GPS module stopped working at 1:22 pm. Steel toed boots or composite boots.

32. Mr. Stone rejects this outright, even though he has no evidence to the contrary.

33. Mr. Stone did not supply any information as to how the GPS module was fixed on that pickup truck, nor if the repair shop noticied any signs of tampering.

34. GPS modules are frequently known to malfunction, due to other, mechanical issues totally unrelated to any tampering.

35. Mr. Stone knows that these GPS modules malfunction as Mr. Nilsson and other employees in the department report maintenance issues with the GPS module.

36. On May 18th, Mr. Stone emailed Mr. Nilsson that he needed to take his van in to the repair shop so that the GPS module could be fixed, because Mr. Stone received an alert from the software system that the GPS module had stopped communicating and was malfunctioning.

37. Mr. Nilsson, wary of another allegation, responded that he could not have known that the GPS module was not working, and Mr. Stone agreed.

38. Mr. Stone said he was not implying that Mr. Nilsson had tampered with the GPS module, but simply that a malfunction had occurred and so it needed to be repaired.

39. Mr. Stone did not clarify why this instance he agreed that there was no tampering, but based upon the same similar set of facts as occurred on May 4th in which the GPS module malfunctioned, in that case Mr. Stone absolutely believed there to be tampering.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000006 of 000020

6

40. Mr. Stone alleged that based upon the tamper alerts sent by the GPS module system, Mr. Nilsson had double or triple the amount of tamper alerts as others.

41. Mr. Stone claimed that from April 1st to June 15th, Mr. Nilsson had seventeen (17) tamper alerts.

42. Mr. Nilsson's Union Representative corrected Mr. Stone that this was not true, because according to the data provided by Mr. Stone, another employee had ten (10) tamper alerts.

43. Mr. Stone further explained that each employee always had at least one (1) tamper alert, because as maintenance was performed, the repair shop would plug and unplug the GPS module, triggering an alert.

44. On June 4th, Tiffany Sherrod of the Leave Center, notified Mr. Stone and JCPS that Mr. Nilsson had not submitted the required FMLA paperwork.

45. Rather than contact Mr. Nilsson directly, the Leave Center directly contacted Mr. Nilsson's supervisors.

46. In fact, Mr. Nilsson had submitted the correct paperwork to Ruth Jenkins, also of the Leave Center, but this was not resolved until June 15th.

47. JCPS constantly and persistently made it difficult and burdensome for Mr. Nilsson to utilize his approved FMLA time.

48. On several occasions, JCPS did not pay Mr. Nilsson for time he worked just over the scheduled end of his shift.

49. Mr. Nilsson was not paid overtime, but should have been paid at the regular, hourly rate.

50. On September 9th, 20th, and 22nd, Mr. Nilsson worked past the 3:30 pm end of his shift in order to complete the technical project he was working on.

51. JCPS refused to pay him for working past 3:30 pm and cut his pay from his time card.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000007 of 000020

52. On or about March, Mr. Nilsson was hospitalized for four (4) days.

53. Mr. Nilsson asked Mr. Stone to use vacation days while he was hospitalized.

54. Mr. Stone initially approved this request, but Mr. Shezhadri later revoked the request and rescinded the paid days from Mr. Nilsson's paycheck.

55. Each opportunity given to JCPS to be flexible and reasonable in accommodating Mr. Nilsson was maliciously used to malign him financially and emotionally, by adding stress and pressure at work and in his personal finances.

56. On July 30, 2021, Mr. Stone formally disciplined Mr. Nilsson based on the paltry evidence as listed above.

57. On August 18, 2021, Mr. Stone called another Due Process hearing to make the allegation that Mr. Nilsson did not notify Mr. Stone at least thirty (30) minutes before work that Mr. Nilsson was using FMLA time.

58. Mr. Nilsson had notified Mr. Stone that he was experiencing problems with his phone, but Mr. Stone did not accept this excuse.

59. On September 13, 2021, Mr. Stone called another Due Process meeting to make the allegation that Mr. Nilsson worked past 3:30 pm on September 9th.

60. 3:30 pm is the end of the scheduled work day for Mr. Nilsson.

61. Over the past two (2) years, Mr. Stone had emailed Mr. Nilsson three (3) separate times to reiterate the policy that Mr. Nilsson was to ask permission if he needed to work past 3:30 pm.

62. Mr. Nilsson had emailed Mr. Stone that he had worked until 4:46 pm on September 9th because the door he was working on was taken apart and rather than leave it like that, Mr. Nilsson takes pride in his work and complete the job as well as he can.

COM : 000008 of 000020

63. Mr. Stone arbitrarily decides that Mr. Nilsson my not work past 3:30 pm, even though Mr. Nilsson does not receive overtime pay.

64. Mr. Nilsson wanted to work to make up the time lost due to taking FMLA in the morning, but Mr. Stone punishes him by directing him that he cannot work past 3:30 pm arbitrarily.

65. Mr. Stone also made the allegation that on Septermber 10th Mr. Nilsson failed ot notify Mr. Stone that he would be using FMLA time.

66. Mr. Nilsson had mistakenly thought that he had sent the email notifying his supervisor, but apologized for this oversight.

67. Mr. Stone continually retaliates to Mr. Nilsson rightfully using FMLA time by elevating these minor incidents into written reprimands.

68. On September 17, 2021, Mr. Stone issued a written reprimand to Mr. Nilsson for the two issues described in the September 13th Due Process meeting.

69. On Setpember 24, 2021, Mr. Stone again held a meeting with Mr. Nilsson because Mr. Nilsson arrived a mere sixteen (16) minutes after 3:30 pm on September 20, 2021.

70. Mr. Nilsson also arrived twenty-seven (27) minutes after 3:30 pm on September 22, 2021, due to the intricate nature of the repairs Mr. Nilsson was completing.

71. Mr. Nilsson never intentionally disobeyed, but attempted to explain to Mr. Stone that because it is difficult or impossible to know the extent of the issue before the equipment is disassembled, it is sometimes more efficient to complete the repair than to completely reassemble, only to disassemble the project on the next working day, not to mention the efficieny of having an issue solved as soon as possible for the proper functioning of the school.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000009 of 000020

72. Mr. Stone uses the Due Process procedure to harass and retaliate against Mr. Nilsson for using his rightful FMLA time by elevating such petty issues to major cause for disciplinary meetings.

73. Even though Mr. Nilsson attempted to follow JCPS policies to settle these greivances, there has been no follow up to Mr. Nilsson's grievance filed on 11/30/2021.

74. Mr. Nilsson transferred to a new department so that he would not continue to suffer under Mr. Stone.

75. Mr. Nilsson earns $20.00 per hour as a Fire Alarm Technician.

## COUNT I. DISCRIMINATION BASED ON AGE

76. Mr. Nilsson hereby incorporates each and every allegation of paragraphs one (1) through seventy-five (75), as if fully set forth with particularity herein.

77. KRS § 344.040(1)(a) makes it unlawful for an employer, "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's ... age forty (40) and over."

78. In Kentucky, "there are two paths for a plaintiff seeking to establish an age discrimination case. One path consists of direct evidence of discriminatory animus." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). The other path is establishing a *prima facie* case of age discrimination where Plaintiff "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which they were discharged, and (4) was replaced by a person outside the protected class." *Id.* at 496.

79. JCPS openly discriminated against Mr. Nilsson because of his age.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000010 of 000020

80. Mr. Nilsson's date of birth is November 14, 1980, and as such, he is a member of a protected class.

81. Hostile treatment by Mr. Stone and JCPS evidences their disregard for the work and services Mr. Nilsson provides, without a single complaint as to the quality of his work.

82. Mr. Stone pursuing claims of GPS tampering against Mr. Nilsson, even though little evidence supported Mr. Stone's claims, in which Mr. Stone used Mr. Nilsson's age and inexperience with GPS technology against him.

83. The actions taken by JCPS were due to Mr. Nilsson's age, in violation of KRS § 344.040 and establish a *prima facie* case of age discrimination against JCPS.

### COUNT II. DISCRIMINATION BASED ON DISABILITY

84. Plaintiff hereby incorporates each and every allegation contained in paragraphs (1) through eighty-three (83) as if fully set forth with particularity therein;

85. KRS § 344.040 states that it is unlawful for an employer to discriminate against an individual because they are a person qualified with a disability.

86. Plaintiff was an individual with a disability of severe anxiety and panic attacks, and he is thus a member of a protected class.

87. Under the American Disability Act, an employer must not discriminate on the basis of a workers' disabilities; the ADA also requires employers to provide reasonable accommodations, including changes to the workplace or job, to allow employees with disabilities to do their jobs proficiently.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000011 of 000020

88. The adverse actions taken by JCPS were due to Mr. Nilsson's disability, and are in violation of KRS § 344.040, and establish a *prima facie* case for disability discrimination against the Defendants.

89. Issuing written reprimands and Due Process hearings after Mr. Nilsson used his FMLA time, even though some of those reprimands were later overturned by Mr. Nilsson filing a Grievance.

90. The excessive Due Process hearings caused Mr. Nilsson emotional and psychological distress, in addition to his depression and anxiety.

91. Mr. Nilsson, having shown that he was treated differently because of his disability, to his detriment, suffered and will continue to suffer monetary losses based on underemployment, humiliation, embarrassment, stress, and loss of income.

92. The actions taken by JCPS were due to Mr. Nilsson's disability, in violation of KRS § 344.040 and establish a *prima facie* case of disability discrimination against Mr. Nilsson.

## COUNT III. RETALIATION

93. Mr. Nilsson hereby incorporates each and every allegation of paragraphs one (1) through ninety-two (92), as if fully set forth with particularity herein.

94. Pursuant to the KCRA, as codified in KRS Chapter 344, it is unlawful for an employer and its employees, agents, and/or representatives to retaliate against an individual because he has opposed a practice declared unlawful by KRS Chapter 344.

95. KRS § 344.280 (1) makes it unlawful for an employer or person to retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000012 of 000020

A claim for unlawful retaliation requires the plaintiff to first establish a *prima facie* case of retaliation which consists of showing that: (1) he engaged in an activity protected by (the KCRA); (2) that exercise of his civil rights was known by the Defendant; (3) that, thereafter, the Defendant took an employment action adverse to the Plaintiff; and (4) there was a causal connection between the activity engaged in the Defendant employer's act. *Brooks v. Lexington-Fayette Urban Cty. Housing Authority*, 132 S.W.3d 790, 803 (Ky. 2004).

96. KRS § 344.030 defines "employer" for the purposes of KRS § 344.280 as "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks" during either the same year as the alleged unlawful discrimination or during the preceding year. Defendant, JCPS is an employer pursuant to this statute.

97. KRS § 344.040 protects an employee from discrimination because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker.

98. Mr. Nilsson is a member of a class protected by KRS § 344 as a forty-two (42) year old male. As such, he was engaged in a protected activity when he used his FMLA time.

99. JCPS knew of Mr. Nilsson's exercise of his Civil Rights.

100. JCPS took materially adverse employment actions against Mr. Nilsson by calling several Due Process hearings, issuing written and verbal warnings, and creating a hostile work environment.

101. JCPS harassed Mr. Nilsson financially and emotionally, by docking pay or reversing approved vacation time only after Mr. Nilsson used FMLA time.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000013 of 000020

13

102.    There is a causal connection between Mr. Nilsson experiencing written reprimands and Due Process hearings and utilizing his FMLA time.

103.    Defendants' conduct violates KRS § 344.280, and Defendants should be held liable.

### COUNT IV. RETALIAITON BASED ON FMLA

104.    Mr. Nilsson hereby incorporates each and every allegation of paragraphs one (1) through one hundred and three (103), as if fully set forth with particularity herein.

105.    "The FMLA makes it unlawful for any employer 'to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act],' or to 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act].'" *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 281 (6th Cir. 2012) (citing 29 U.S.C § 2615(a)(1); 29 U.S.C §2615(a)(2)).

106.    The 6th Circuit has recognized two (2) theories of recovery under the FMLA. "(1) the so-called interference or entitlement theory arising from § 2615(a)(1), and (2) the retaliation or discrimination theory arising from § 2615(a)(2)." *Id*. at 282 (internal quotations and citations omitted).

107.    "Although we have held that a claim for retaliatory discharge is cognizable under either theory, the requisite proofs differ." *Id.*

108.    The retaliation theory is base in "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Id.* (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). Further, "the employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Id.*

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000014 of 000020

14

109.    In the current case, JCPS took the adverse action of removing Mr. Nilsson's pay for hours worked after 3:30 pm on days in which he used FMLA time in the morning

110.    JCPS specifically rejected previously approved vacation or sick days, as well as docked pay for hours worked past the scheduled time.

## COUNT V. PROMISSORY ESTOPPEL

111.    Mr. Nilsson hereby incorporates each and every allegation of paragraphs one (1) through one hundred and ten (110), as if fully set forth with particularity herein.

112.    Under Kentucky law, the elements of promissory estoppel are: (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Res-Care, Inc. v. Omega Healthcare Investors, Inc.*, 187 F.Supp.2d 714, 718 (W.D. Ky. 2001).

113.    JCBE policy states that "Employees shall not be required to work under conditions determined…to be detrimental to their health, safety, and well-being. Employees retain the right to grieve an unsafe practice." Article 8, Item 5, pg. 18 of JCBE-JCAESP/AFSCME AGREEMENT, 2017-2021.

114.    JCPS can reasonably expect their own policies to induce action on the part of their employees. Especially when their policies read like a call to action.

115.    Mr. Nilsson was induced into an action when he filed grievances with JCPS and sent emails to upper management of JCPS stating his grievances and the practices of Mr. Stone which impacted his "health, safety, and well-being."

116.    Mr. Nilsson has faced harm as a result of his reliance, and injustice can only be avoided by the enforcement of Defendant's promise.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000015 of 000020

## COUNT VI. HOSTILE WORK ENVIRONMENT

117.     Mr. Nilsson hereby incorporates each and every allegation of paragraphs one (1) through one hundred and sixteen (116), as if fully set forth with particularity herein.

118.     In Kentucky, to establish a *prima facie* case of hostile work environment, Plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment regarding their protected class; (3) the harassment was based on the protected class; (4) the harassment had the effect of unreasonably interfering with his work performance by creating intimidating, hostile, or offensive work environment; and (5) the existence of respondent superior liability.

119.     Mr. Nilsson, as a male over the age of forty, is a member of a protected class.

120.     Mr. Nilsson was subjected to harassment by an excessive use of Due Process hearings and using extremely minor incidents to be escalated into major infractions, as Mr. Stone and JCPS negatively viewed Mr. Nilsson's use of FMLA time and thus found any reason to malign him.

121.     Mr. Nilsson was subjected to unwelcomed harassment on the basis of his disability and rightful usage of his FMLA leave. Similarly situated employees without FMLA leave were not subjected to the same harassment and antics.

122.     The harassment unreasonable interfered with Mr. Nilsson's work performance by creating and/or condoning an intimidating, hostile, or offensive work environment.

123.     Respondent superior liability theorizes that when one acts through the agency of another, he is himself acting and thus responsible for the acts of his agent. *Brooks v. Grams*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008). "When an agent fails in any duty which he owes a third party or the public generally, the principal is responsible for the future." *Smith v.*

16

*Smith*, 333 S.W.2d 503, 504 (Ky. 1960). Under these circumstances, an employer is strictly liable for damages resulting from the tortious acts of his employees. *Patterson v. Blair*, 172 S.W.3d 361, 364 (Ky. 2005).

124.     In the current case, both Defendants have acted in a tortious manner. JCPS is liable for their own actions and through the theory of respondent superior liability, JCPS is liable for Mr. Stone's, Mr. Shezhadri's, Ms. Harris', and Mr. Atwood's actions.

## VII. INTERFERENCE WITH FMLA

125.     Mr. Nilsson hereby incorporates each and every allegation of paragraphs one (1) through one hundred and twenty-four (124), as if fully set forth with particularity herein.

126.     In Kentucky, to establish a *prima facia* case of interference with FMLA, Plaintiff must show that (1) he was an eligible employee; (2) his employer was a covered employer; (3) he was entitled to leave under the FMLA; (4) he gave his employer notice of his intent to take leave; and (5) his employer denied him FMLA benefits or interfered with FMLA benefits or right to which he was entitled. *Crawford v. JP Morgan Chase & Co.*, 531 Fed. App'x 622, 625 (6th Cir. 2013).

127.     Mr. Nilsson was frequently harassed for utilizing his FMLA time.

128.     On June 4th, the JCPS Leave Center contacted Mr. Nilsson's superivsors, instead of contacting Mr. Nilsson directly about his private, medical concerns.

129.     In fact, the Leave Center had made the error, and it took over a week until the error was fixed, but the damage was done. This demonstrates the pattern of interfering with FMLA perpetrated by JCPS.

## VIII. WAGE AND HOUR

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000017 of 000020

17

130.    Mr. Nilsson hereby incorporates each and every allegation of paragraphs one (1) through one hundred and thirty (130), as if fully set forth with particularity herein.

131.    In Kentucky, to establish a *prima facia* case of infringement of wage and hour compensation, Plaintiff must show that under KRS § 337.385 Defendant failed to pay wages and overtime due to them.

132.    JCPS and Mr. Stone docked Mr. Nilsson's pay several times, clearly violating Kentucky law.

133.    On September 9th, 20th, and 22nd, Mr. Nilsson's pay was docked because he worked past the end of his shift, which was scheduled to end at 3:30 pm.

134.    Defendants' conduct violates KRS § 337.385, and Defendants should be held liable.

### PRAYER FOR RELIEF

Plaintiff, Mr. Nilsson, hereby incorporates all preceding paragraphs as if fully set forth with particularity herein.

**WHEREFORE**, Mr. Nilsson, prays this Court:

1. Declare Defendants' conduct is in violation of Mr. Nilsson's rights;

2. Award Mr. Nilsson compensatory damages in such amount as shall be proven at trial for his economic, personal and other losses;

3. Award Mr. Nilsson damages in an amount to be proven at trial for humiliation, embarrassment, apprehension about his future, and emotional stress, which the Defendants caused Mr. Nilsson by their illegal, discriminatory, and wrongful acts towards him;

4. Award Mr. Nilsson costs, interest, and attorneys' fees pursuant to KRS § 344; and

5. Grant him such further relief as this Court may deem just and proper.

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000018 of 000020

18

## JURY DEMAND

Plaintiff, Mr. Nilsson, demands a jury to try all issues triable by jury.

Respectfully submitted,

/s/ Samuel G. Hayward, Jr.
Samuel G. Hayward, Jr.
ADAMS HAYWARD & WELSH
4036 Preston Highway
Louisville, Kentucky 40213
(502) 366-6456
sghayw@gmail.com

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000019 of 000020

19

## **VERIFICATION**

I have read the foregoing statements in the Verified Complaint and they are true and accurate to the best of my knowledge and belief.

Christopher Nilsson

COMMONWEALTH OF KENTUCKY        )
                                )
COUNTY OF JEFFERSON             )

Subscribed and sworn to before me by Christopher Nilsson, this **11** day of **APRIL**, 2022.

NOTARY,
STATE-AT-LARGE, KENTUCKY

_624285_

My Commission Expires: **06/22/2023**



Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000020 of 000020